**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

Rusty Haynes,

                Debtor.

Rusty Haynes, Individually and On Behalf
Of All Others Similarly Situated,

                Plaintiff,

      -against-

Chase Bank USA, N.A.,

                Defendant.

Index No.: 18-cv-03307-NSR

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR FINAL APPROVAL</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................3

I.      The Terms of the Proposed Settlement............................................................5

II.     Notice to the Class. .........................................................................................7

ARGUMENT ...................................................................................................8

I.      The Court Should Grant Final Approval of the Proposed Settlement. ...............8

        A.      Legal Standard. ....................................................................................9

        B.      The Settlement Meets the Standard for Final Approval. .......................10

                1.      The Settlement is Procedurally Fair...........................................11

                2.      The Settlement is Substantively Fair, as Application of the *Grinnell*
                        Factors Shows. ........................................................................12

                        i.      The Complexity, Expense, and Likely Duration of Litigation. .....12

                        ii.     The Reaction of the Class to Settlement. ......................................13

                        iii.    The Stage of the Proceedings and the Amount of Discovery
                                Completed. ...................................................................................14

                        iv.     The Risks of Establishing Liability and Damages.........................14

                        v.      The Risk of Maintaining Class Action Status Through Trial. .......15

                        vi.     The Ability of the Defendant to Withstand a Greater Judgment. ...15

                        vii.    The Range of Reasonableness of the Settlement Fund.................16

        C.      The Notice Satisfies Due Process and Rule 23....................................17

        D.      The Court Should Certify the Class for Settlement. .............................19

CONCLUSION..............................................................................................19

# **TABLE OF AUTHORITIES**

Cases

*Banyai v. Mazur*,
    2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) .......................................................................... 14

*Bodon v. Domino's Pizza, LLC*,
    2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) .......................................................................... 16

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) ................................................................................................ 9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................................... 9, 12

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...................................................................... 10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .............................................................................................. 9, 11

*Echevarria v. Bank of America Corp.*,
    No. 7:17-cv-08026-VB (S.D.N.Y.) ...................................................................................... 3

*Hadel v. Gaucho, LLC*,
    2016 WL 1060324 (S.D.N.Y Mar. 14, 2016) ........................................................................ 9

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986) .............................................................................................. 17

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................ 15

*In re Med. X-Ray Film Antitrust Litig.*,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................................................... 15

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................ 11

*In re Sinus Busters Products Consumer Litig.*,
    2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ...................................................................... 15

*Manley v. Midan Rest. Inc.*,
    2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ...................................................................... 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998) ................................................................................ 10

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) .......................................................................... *passim*

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................. 12

*Snapp v. The Topps Co., Inc.*,
    1997 WL 1068687 (E.D.N.Y. Feb. 12, 1997) ..................................................... 13

*Tiro v. Pub. House Investments, LLC*,
    2013 WL 2254551 (S.D.N.Y. May 22, 2013) ..................................................... 11

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. May 1, 2014) ....................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 9, 13, 17

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y Feb. 18, 2011) ........................................................ 14

*Zeltser v. Merrill Lynch & Co.*,
    2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ............................................... 14, 15

Statutes

Section 524 of the Bankruptcy Code ......................................................................... 1, 3

Rules

Fed. R. Civ. P. 23(e) ........................................................................................................ 3

Fed. R. Civ. P. 23(e)(1) .................................................................................................. 17

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 9

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 4, 11

Rule 23(b)(3) .................................................................................................................. 17

Rule 23(c)(2)(B) ............................................................................................................. 17

Rule 23(c)(3) .................................................................................................................. 18

Plaintiff Rusty Haynes ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of Plaintiff's unopposed motion for final approval of the parties' settlement of this class action suit ("Motion").

## PRELIMINARY STATEMENT

In this class action, Plaintiff has alleged that Chase Bank USA, N.A. ("CBUSA" or "Defendant") violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to update the credit furnishing on certain consumer debts to reflect that those debts were discharged in bankruptcy. CBUSA denies the allegations in the Complaint and Amended Complaint and denies that its conduct violated the discharge injunction.

The Parties have agreed to enter into a Settlement Agreement to resolve this case.[1] If approved, the Settlement would resolve the claims against Defendant in this action. The Settlement Agreement was negotiated at arm's length by experienced and knowledgeable counsel, with the assistance of an experienced mediator, following significant discovery, and it is a fair, reasonable and adequate settlement. For these reasons, final approval is warranted.[2]

Pursuant to the Settlement Agreement, as described further below, Defendant has agreed to fund an $11.5 million Settlement Fund and pay Class Counsel up to $3.75 million in Attorneys' Fees and Expenses, subject to Court approval. Based on its records, CBUSA estimates that there are over one million Affected Accounts (as defined in the Settlement Agreement). Those Class Members who submitted payments to CBUSA on an Affected Account post-discharge and do not

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

[2] The Parties have agreed upon a form Proposed Final Approval Order, which is Exhibit 4 to the Settlement Agreement filed herewith.

1

opt out of the Settlement will receive automatic payments from the Settlement Administrator to reimburse them for those payments.  The remaining settlement monies will be distributed to the Class on a claims-made basis.

It is estimated that automatic reimbursement payments will total approximately $386,000. Based on this estimate of automatic reimbursement payments and the distribution claims submitted to date, it is estimated that the distribution claim payments will range from approximately $100-$114 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Notably, no settlement monies will revert to CBUSA and costs of Notice are paid by CBUSA, not from the Settlement Fund.

As a part of the Agreement, CBUSA also represents and warrants that it has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts it has identified and further represents and warrants that, absent specified exceptions (e.g., a Class Member's request), it will not request that the Credit Reporting Agencies reinstate those Tradelines.  In addition, CBUSA represents and warrants that if it resumes selling Defaulted Credit-Card Accounts to Debt Buyers on or before September 1, 2021, then absent any change in federal or state law or contrary direction or expectation from any government regulator, CBUSA will, after the sale of each such account, request that the Credit Reporting Agencies delete or suppress the CBUSA Tradelines for that account or for such account as to which the cardmember post-sale files for and obtains a Chapter 7 discharge of the debt.

As such, the Settlement offers substantial relief to the Settlement Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

In addition, this Settlement is comparable to the settlement this Court recently approved in *Echevarria v. Bank of America Corporation, et al. (In re Echevarria),* No. 7:17-cv-08026-VB, Dkt. 23. In *Echevarria*, where there were over 400,000 class members, Bank of America agreed to fund a $5.5 million settlement fund and pay Class Counsel up to $1 million in fees and expenses. *Echevarria* at Dkt. 12-1. Class Counsel exercised the right to seek approval for up to an additional $500,000 in fees and expenses, to be paid from the settlement fund. *Id*. at Dkt. 14-16. Bank of America also agreed to substantially identical representations and warranties to those CBUSA agrees to here. *Id*. at Dkt. 12-1.

For all of these reasons, and as further described below, Plaintiff respectfully requests that this Court grant final approval of the Settlement. *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that CBUSA had a policy of refusing to update its credit furnishing on sold credit-card debt subsequently discharged in a Chapter 7 bankruptcy. Plaintiff alleges that CBUSA's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressured consumers to repay discharged debt in order to have the negative information removed from his or her credit report. Am. Compl. ¶¶ 81-90. Plaintiff alleges that CBUSA's systematic refusal to update its credit furnishing violated the discharge injunction set forth in § 524 of the Bankruptcy Code. CBUSA denies these allegations and denies that its conduct violated the discharge injunction. The Settlement Agreement that Plaintiff now submits for final approval provides excellent relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On June 20, 2011, Plaintiff Rusty Haynes filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. *In re Rusty Haynes and*

*Bernadette Gatling Haynes*, No. 11-23212 (RDD).  The Bankruptcy Court entered a discharge order on September 26, 2011.  On or about September 13, 2013, Mr. Haynes moved to reopen his bankruptcy for the purpose of challenging CBUSA's conduct, and the Bankruptcy Court granted his motion on December 10, 2013.

On December 31, 2013, Plaintiff Rusty Haynes, individually and on behalf of all others similarly situated, filed a complaint against CBUSA in the Bankruptcy Court (the "Complaint"). *Haynes v. Chase Bank USA, N.A.,* Adv. Proc. No. 13-08370 (RDD), Dkt. No. 1.  Plaintiff filed an Amended Complaint on January 27, 2014.  Dkt. No. 6.  The parties subsequently engaged in extensive motion practice.

On February 24, 2014, CBUSA moved to dismiss the Amended Complaint.  Dkt No. 10. Following full briefing and oral argument, the Bankruptcy Court denied the motion.  *See* Dkt. No. 56.  On February 28, 2014, CBUSA filed a motion to withdraw the reference of the action to the Bankruptcy Court.  Dkt. No. 13.  After full briefing and oral argument, by decision dated March 2, 2015, the District Court denied that motion.  *See* Dkt. No. 81.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories and requests for admission.  *See* Declaration of Adam R. Shaw in Support of Motion for Final Approval of Settlement ("Shaw Decl.") at ¶ 4. In response to requests for production served by Class Counsel, CBUSA made twenty-eight document productions, totaling just under 300,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation.  *Id.*  Class Counsel also deposed a corporate representative of CBUSA pursuant to Fed. R. Civ. P. 30(b)(6) and three employees of CBUSA. *Id.*  In addition, Class Counsel have issued third party subpoenas in the course of the litigation.  *Id.*

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation. The parties had numerous settlement discussions and mediated the dispute with an experienced and well-respected mediator from JAMS, Michael Young. *Id*. at ¶ 6.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the Settlement. The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature. Plaintiff had two objectives in filing this action – to remedy the alleged violation of the discharge injunction by having CBUSA either remove its furnishing of charge off on Affected Accounts or update its credit furnishing for those Accounts and to compensate putative Class Members who Plaintiff alleges were harmed by CBUSA's actions. As described further below, the Settlement Agreement achieves both objectives and further safeguards the credit reports of future consumers. CBUSA has addressed the credit furnishing with respect to Class Members' Affected Accounts and, under the terms of the Settlement, if CBUSA resumes selling debt, it has represented and warranted that it will address Tradelines related to those sales as set forth in the Settlement Agreement. Moreover, the Settlement provides reimbursement to Class Members who made post-discharge payments on their sold CBUSA debts, and further allows Settlement Class Members to make claims from an $11.5 million Settlement Fund.

## I.     The Terms of the Proposed Settlement.

Under the Settlement Agreement, the Class is defined as the collective group of those individuals (i) who maintained a Credit Card Account with CBUSA; (ii) whose account CBUSA charged off and then sold to a Debt Buyer on or after January 1, 2008; and (iii) who post-sale

sought and obtained a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, through and including the date of preliminary approval.  Agreement, § 1.14.

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that CBUSA will fund a qualified Settlement Fund of $11.5 million.  From this Settlement Fund, the Settlement Administrator shall automatically reimburse Class Members whom CBUSA has identified as having made a payment or payments to CBUSA on an Affected Account post-discharge (called "CBUSA Post-Discharge Payors").  Agreement, § 5.1.  CBUSA Post-Discharge Payors will not need to submit a Claim Form in order to receive this payment.  *Id*.  Class members who believe that they made post-discharge payments to CBUSA and that they are entitled to reimbursement, but who do not receive reimbursement, may submit a claim.  The remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants who submit a Qualifying Claim Form, as described more fully in the Agreement.  *Id*. at § 5.2.  The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $5,000 from the Settlement Fund.  *Id*. at § 15.6.

In addition, as a direct result of the Action, CBUSA has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts that have been identified.  *Id*. at § 3.2.1.  CBUSA further represents and warrants as a part of the Settlement that absent specified exceptions (e.g., a Class Member's request), CBUSA will not ask the Credit Reporting Agencies to reinstate these Tradelines.  *Id*. at §§ 3.2.2-3.2.3.  CBUSA also represents and warrants as a part of the Settlement that "since the filing of the Action, CBUSA has not sold Defaulted Credit-Card Accounts to Debt Buyers."  *Id*. at § 3.2.5.  It further represents and warrants that if it *does* resume selling such debt on or before September 1, 2021, absent any change in

federal or state law or contrary direction or expectation from any government regulator, it will request that the Credit Reporting Agencies delete or suppress the CBUSA Tradelines for such accounts. *Id*. at § 3.2.6 ("If CBUSA resumes selling Defaulted Credit-Card Accounts to Debt Buyers after the date of the execution of this Agreement and on or before September 1, 2021, then, absent any change in federal or state law or contrary direction or expectation from any government regulator, CBUSA will, after the sale of each such account, either (1) request that the Credit Reporting Agencies delete or suppress the CBUSA Tradeline for that account; or (2) request that the Credit Reporting Agencies delete or suppress the CBUSA Tradeline for any such account as to which the cardmember post-sale files for and obtains a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code.").[3]  Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides relief to them and to future consumers.

Under the Agreement, CBUSA shall separately pay Attorneys' Fees and Expenses and the settlement administration costs directly to Class Counsel and the Settlement Administrator respectively; these payments shall not be made from the Settlement Fund (except as described in the following). *See id*. at § 15.  In addition, under the Agreement, Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed $3.75 million. *Id*.  CBUSA shall pay these Fee and Expenses directly to Class Counsel. *Id*.

II.     **Notice to the Class.**

As provided in the Settlement Agreement, CBUSA selected a Settlement Administrator, with the consent of Class Counsel, who distributed Notice to the Class.  Agreement, § 1.53;

---

[3] Section 3.2.7 in the Settlement Agreement addresses CBUSA's obligations under the Agreement if federal or state law should change to require it to furnish on such debt.

Declaration of Jason M. Stinehart ("Stinehart Decl.") at ¶ 4.  CBUSA confidentially provided a list of all Class Members known to CBUSA to the Settlement Administrator, who then provided Mail Notice directly to all Class Members.  *Id*. at § 7.2-7.3; Stinehart Decl. at ¶ 4.  As also provided in the Settlement Agreement, the Mail Notice was mailed to Class Members on a timely basis, *i.e.*, within forty-five days after the Bankruptcy Court's approval of the Mail Notice.  *Id*. at § 1.36; Stinehart Decl. at ¶ 4.  The Long Form Notice, available on the Settlement Website, provides detailed information concerning the Action, the terms of the Settlement, the Settlement approval process, and how to participate in the Settlement, opt out of it, or object to it.  *Id*. at Ex. 1b; Stinehart Decl. at ¶ 9.  Class Members have submitted Claim Forms both via mail and through the Settlement Website.  Stinehart Decl. at ¶ 14.

## ARGUMENT

### I.      The Court Should Grant Final Approval of the Proposed Settlement.

Class Counsel have worked diligently to reach a fair, reasonable, and adequate settlement. Plaintiff and Class Counsel believe the claims the Settlement resolves are meritorious.  They recognize, however, that there is significant risk and expense associated with continuing to prosecute these claims through trial and any potential appeals.  In negotiating and evaluating the Settlement, Plaintiff and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation.  Indeed, this action has already been pending for more than four years.  In light of the foregoing considerations, Class Counsel believe the proposed Settlement provides an excellent outcome and is thus in the best interests of Class Members.

### A.       Legal Standard.

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.  "A court may approve a class action settlement only after . . . finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In order to determine whether a settlement is "fair, reasonable, and adequate," a court must assess whether the settlement is both procedurally and substantively fair.  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

As the Second Circuit has recognized, there is a "strong judicial policy in favor of settlements, particularly in the class action context."  *McReynolds*, 588 F.3d at 803 (internal quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *Hadel v. Gaucho, LLC*, No. 15 CIV. 3706, 2016 WL 1060324, at *2 (S.D.N.Y Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.").

Consistent with the strong judicial policy in favor of settlement, in assessing whether a settlement is procedurally fair, courts apply a "presumption of fairness, reasonableness and adequacy as to the settlement where a class settlement is reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *McReynolds*, 588 F.3d at 803 (internal quotation omitted).  In assessing whether a settlement is substantively fair, courts in this Circuit use the nine factor-test set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  These factors are: (1) the complexity, expense and likely duration of the litigation; (2)

the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.*

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties."  *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted).  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Id.* (internal quotation marks omitted).  The Second Circuit will only disturb a judicially-approved class action settlement when there is a clear showing that the district court abused its discretion.  *McReynolds*, 588 F.3d at 803.

**B.      The Settlement Meets the Standard for Final Approval.**

The proposed Settlement is both procedurally and substantively fair.  The Bankruptcy Court has already "preliminarily approved . . . the Settlement . . . as fair, reasonable, and adequate" and found on a preliminary basis that "the Settlement . . . falls within the range of reasonableness and was the product of informed, good-faith, arms'-length negotiations between the Parties and their counsel, and therefore meets the requirements for preliminary approval."   *Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 125 at 3-4.  Likewise, the proposed Settlement meets all of the requirements for final approval.

10

### 1.    The Settlement is Procedurally Fair.

In order to demonstrate a settlement's procedural fairness, a party must show that "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (internal quotation omitted).  When counsel for the parties engage in diligent arm's length negotiations, a settlement is generally entitled to a presumption of fairness.  *See In re NASDAQ Mkt. Makers Antitrust Litig*., 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*").  The participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion.  *D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Settlement is the product of vigorous, arm's length negotiations by informed and experienced counsel, following the necessary discovery.  With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses. Shaw Decl. at ¶ 4.  Moreover, they have briefed a number of contested issues to the Bankruptcy Court, and conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on CBUSA.  *Id*.  In response to Plaintiff's document requests, CBUSA produced just under 300,000 pages of documents, which Class Counsel have analyzed.  *Id*.  Class Counsel have also deposed a corporate representative of CBUSA pursuant to Fed. R. Civ. P. 30(b)(6), deposed additional Chase witnesses, and sought third party discovery.  *Id*.

By engaging in thorough discovery and the litigation of these claims in the Bankruptcy Court, Class Counsel has obtained the necessary understanding of the strengths and weaknesses of Plaintiff's claims.

With respect to the negotiation of the Settlement, both Plaintiff and the Settlement Class and CBUSA are represented by experienced and knowledgeable counsel.  In particular, Class Counsel has experience in both complex class action litigation and bankruptcy law.   The Settlement was reached after the parties engaged in extensive negotiations over a period of months. These negotiations included face-to-face sessions as well as numerous telephone and email discussions.  Moreover, the parties' face-to-face negotiations took place during mediation sessions with, as well as follow-up communications through, an experienced and highly regarded JAMS mediator.  *Id*. at ¶ 6.  In all respects, the negotiations were thorough and hard fought, and free from any undue pressure or collusion.

As such, the Settlement is procedurally fair and is entitled to a "presumption of fairness, reasonableness and adequacy."  *McReynolds*, 588 F.3d at 803.

## 2. The Settlement is Substantively Fair, as Application of the *Grinnell* Factors Shows.

In order to demonstrate a settlement's substantive fairness for final approval, a party must demonstrate that the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are satisfied.  Here, these factors overwhelmingly favor final approval of the Settlement.

### i. The Complexity, Expense, and Likely Duration of Litigation.

First, the complex, expensive and time-consuming nature of this litigation weighs heavily in favor of settlement.  *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis

for approving a settlement.") (internal quotation omitted).  The procedural history outlined above demonstrates that this litigation is, by its nature, complex.  Moreover, it has already gone on for more than four years, at significant expense to the parties.  If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming.  This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial.  In addition, post-judgment appeals are also possible.  This litigation would be costly and time-consuming and would require significant judicial oversight.

### ii.       The Reaction of the Class to Settlement.

The reaction of the Class to the Settlement has been overwhelmingly positive, as demonstrated by the exceedingly low number of objections received to date.  As of this date, out of over one million Class Members, only one has filed an objection with the Court.  *See* Dkt. No. 6.[4]  The exceedingly small number of objections from such a large settlement class indicates that the proposed settlement is fair.  *See Snapp v. The Topps Co., Inc.*, No. 93-CV-0347, 1997 WL 1068687, at *2 (E.D.N.Y. Feb. 12, 1997) ("The dearth of objections carries considerable weight in the determination of fairness."); *see also Wal-Mart*, 396 F.3d at 118-19.  Moreover, the single objection does not raise a substantive objection to the Settlement.  In addition, only 94 Class Members have requested to opt out.  Stinehart Decl. at ¶ 18.

---

[4]  Class Counsel is unaware of objections submitted to the settlement administrator, if any. Pursuant to the terms of the Settlement Agreement, objections are to be filed with the Court. Agreement, § 12.

### iii. The Stage of the Proceedings and the Amount of Discovery Completed.

This factor also weighs heavily in favor of settlement, given that the action has been pending for more than four years and Class Counsel have taken a significant amount of discovery during that time period, as described above. As a result of the discovery taken to date and as a result of discovery taken in related cases pending in the Southern District Bankruptcy Court, Class Counsel have gained sufficient insight into the facts and legal issues associated with the case to make the necessary judgments concerning settlement. *See Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses or their claims and to accurately estimate damages at issue."). In short, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 WL 1274577, at *9 (S.D.N.Y. Mar. 30, 2016).

### iv. The Risks of Establishing Liability and Damages.

As with any litigation, this action inherently involves risks. Thus, this factor weighs in favor of settlement, as well. CBUSA continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's claims, as it has done every step of the way to date. As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides. *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it

is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser*, 2014 WL 4816134, at *6.

v.        **The Risk of Maintaining Class Action Status Through Trial.**

This factor also weighs in favor of settlement, as CBUSA has already mounted a challenge to the class allegations in this action and would no doubt vigorously oppose class certification.  At the motion to dismiss stage of the litigation, CBUSA moved to strike the class allegations in Plaintiff's complaint, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type.  *See Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 63 at 10-14.  While the Bankruptcy Court denied CBUSA's motion to strike the class allegations, CBUSA would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification.  Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (stating that a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

vi.        **The Ability of the Defendant to Withstand a Greater Judgment.**

This factor is neutral.  While CBUSA would likely be able to withstand a greater judgment, where, as here, the other *Grinnell* factors weigh in favor of settlement, this one factor does not weigh against settlement.  *See, e.g.*, *In re Sinus Busters Prods. Consumer Litig.*, No. 12-CV-2429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that a [defendant's]

ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement.") (citations omitted); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citation omitted).

### vii.     The Range of Reasonableness of the Settlement Fund.

*Grinnell* directs that the court view the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) all the attendant risks of litigation.  *See, e.g., Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) ("[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]") (citation omitted).  These factors also weigh heavily in favor of settlement.

Here, Plaintiff alleges that CBUSA violated the discharge injunction of the Bankruptcy Code by failing to update its credit furnishing on Class Members' Affected Accounts to remove the "charged off" or other derogatory notation and instead furnish that debt as "Included in Bankruptcy."  As a result of this litigation and as a part of the Settlement, CBUSA has requested deletion of the Tradelines associated with Class Members' Affected Accounts and, in the event it resumes selling debt, to address any future issues in the manner described above (*see supra* pp. 5-7).  This relief provides an excellent outcome for both the Class and for future consumers. Moreover, Class Members are entitled to make claims from an $11.5 million Settlement Fund.  In addition, Class Members whose debts CBUSA sold and were later discharged in Chapter 7 bankruptcy, and who subsequently made payments on those debts to CBUSA, will receive an automatic reimbursement payment from the Settlement Fund.

Taking all of the above into account, Class Counsel have achieved the best possible recovery in light of the cost and risks of further litigation.

* * *

Thus, application of the *Grinnell* factors indicates that the Settlement is substantively fair. As such, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

### C.   The Notice Satisfies Due Process and Rule 23.

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice procedures must be reasonable and comport with due process. *Wal-Mart*, 396 F.3d at 113 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.") (citations omitted); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

Rule 23(c)(2)(B) also provides that, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It further provides that the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

17

Here, Notice to the Class was reasonable and comported with the requirements of the Federal Rules of Civil Procedure and due process.  The Bankruptcy Court preliminarily approved the Settlement and the proposed Notice on April 4, 2018.  *Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 125.  As described above, Notice was provided to the Class promptly after the entry of the Preliminary Approval Order.  Here, CBUSA's records and publicly available bankruptcy court records permitted identification of all Class Members known to CBUSA, allowing Mail Notice to be sent directly to them.  Agreement, § 7.2.  The Settlement Administrator sent Mail Notice directly to Class Members within forty-five days after the Bankruptcy Court entered the Preliminary Approval Order.  *Id*. at §§ 1.36; 7.3; Stinehart Decl. at ¶ 4.  The Settlement Agreement, Long Form Notice and Claim Forms are also available on the Settlement Website.  *Id*. at §§ 7.3, 7.6; Stinehart Decl. at ¶ 9.  Thus, Mail Notice was provided to all Class Members in a timely fashion, giving them sufficient time to decide whether to participate in the Settlement, object or opt out.  *Id*. at §§ 1.40; 1.41; *see also generally* §§ 11, 12.  Thus, Notice in this action more than meets the reasonableness standard.

In addition, the Notice is sufficiently detailed, as required by Rule 23(c)(3).  The Long Form Notice, available on the Settlement Website, describes the nature of the Action, defines the Settlement Class, explains the Released Claims, as well as the monetary and other terms of the Settlement, and fully details the Settlement Class Members' rights.  *See* Agreement, Exh. 1b.  It also indicates the time and place of the Final Approval Hearing, and the process for opting out of or objecting to the Settlement.  *Id*.  It also details the provisions for payment of Attorneys' Fees and Expenses and provides contact information for Class Counsel.  *Id*.

For these reasons, the Notice provided to the Class is not only reasonable but also the best Notice that is practicable under the circumstances.

**D.      The Court Should Certify the Class for Settlement.**

Plaintiff asked the Bankruptcy Court to preliminarily certify the Class for settlement purposes, and it did so on April 4, 2018. *Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. Nos. 122 and 125. For the reasons identified in Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval (Dkt. No. 122-1 at 16-21), Plaintiff requests that the Court certify the Class. Plaintiff also requests that the Court confirm the prior appointment of the Plaintiff Rusty Haynes as Class Representative, and the law firms of Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement Agreement as set forth in Proposed Final Judgment and Order of Dismissal with Prejudice submitted by the parties. *See* Settlement Agreement at Exh. 4.

Respectfully submitted,

Dated:  Albany, New York
        August 6, 2018

**BOIES SCHILLER FLEXNER LLP**

By:     _/s/ Adam R. Shaw_____
        George F. Carpinello
        Adam R. Shaw
        Anne M. Nardacci
        30 South Pearl Street
        Albany, NY  12207
        (518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff*

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 6, 2018, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Adam R. Shaw*
Adam R. Shaw
