**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Rusty Haynes,<br><br>        Debtor.<br><hr>Rusty Haynes, Individually and On Behalf<br>Of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>Chase Bank USA, N.A.,<br><br>        Defendant. | Index No.: 18-cv-03307-NSR |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNCONTESTED**
**MOTION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARD**
**PAYMENTS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................3

I.  The Terms of the Proposed Settlement ...........................................................6

ARGUMENT ..........................................................................................................8

I.  The Requested Attorneys' Fees Are Reasonable and Appropriate.....................8

    A.  CBUSA Will Pay $3.75 Million in Fees and Expenses Directly to Class
        Counsel ...............................................................................................10

    B.  The Proposed Award to Class Counsel is Reasonable and Appropriate
        Under Both the Percentage and Lodestar Methods.................................12

    C.  The Proposed Award to Class Counsel is Reasonable Under the *Goldberger*
        Criteria ................................................................................................16

        1.  The Time and Labor Expended By Class Counsel ...................17

        2.  The Risks of the Litigation ...................................................18

        3.  The Magnitude and Complexity of the Litigation ...................20

        4.  The Requested Fee in Relation to the Settlement ...................20

        5.  The Quality of the Representation ..........................................21

        6.  Public Policy Considerations .................................................22

II.  Class Counsel's Expenses Are Reasonable and Appropriate ............................22

III.  The Proposed Incentive Award to the Class Representative is Reasonable and
    Appropriate .....................................................................................................23

CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany,*
  522 F.3d 182 (2d Cir. 2008)............................................................................. 14, 15

*Banyai v. Mazur,*
  2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ........................................................ 18

*Boeing Co. v. Van Gernert,*
  444 U.S. 472 (1980).......................................................................................... 8

*Cavalieri v. General Elec. Co.,*
  2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ...................................................... 11

*Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco
Managed Care, L.L.C.,*
  504 F.3d 229 (2d Cir. 2007)............................................................................. 13

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)............................................................................. 18

*City of Providence v. Aeropostale, Inc.,*
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................... 13

*Dornberger v. Metropolitan Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................................... 24

*Echevarria v. Bank of America Corp.* (*In re Echevarria*),
  No. 7:17-cv-08026-VB (S.D.N.Y.).............................................................. passim

*Edmonds v. United States,*
  658 F. Supp. 1126 (D.S.C. 1987)...................................................................... 21

*Elliot v. Leatherstocking Corp.,*
  2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012)...................................................... 23

*Fleisher v. Phoenix Life Ins. Co.,*
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)................................................ 12, 15

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000).......................................................................... passim

*Hubbard v. Donahoe*,
   2013 WL 3943495 (D.D.C. July 31, 2013).............................................................................. 13

*In Re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
   2006 WL 3378705 (S.D.N.Y. Nov. 16, 2009) *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008).............15

*In re Arakis Energy Corp. Sec. Litig.*,
   2001 WL  1590512 (E.D.N.Y. Oct. 31, 2001)........................................................................ 23

*In re Bisys Sec. Litig.*,
   2007 WL 2049726 (S.D.N.Y.  July 16, 2007) .................................................................... 9, 15

*In Re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. 2010) ................................................................................15, 16

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   2001 WL 709262 (S.D.NY. June 22, 2001) .......................................................................... 18

*In re Excess Value Ins. Coverage Litig.*,
   598 F.Supp.2d 380 (S.D.N.Y. 2005)..................................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................................................................... 22

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................... 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................... 13

*In re Hi–Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................... 16

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y.  Nov. 26, 2002) ..................................................................... 9

*In re Marsh ERISA Litig.*,
   265 F.R.D 128 (S.D.N.Y. 2010). .......................................................................................... 21

*In re Med. X-Ray Film Antitrust Litig.*,
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)............................................................................ 19

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)............................................................................ 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................... 14, 15

iv

*In re Polaroid ERISA Litig.*,
   2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................................ 24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ............................................................... 14, 19

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ................................................................... 14

*In re Visa Check*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................... 23

*In re Vitamins Antitrust Litig.*,
   2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) .............................................. 23

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................... 9, 10, 15, 22

*Johnson v. City of New York*,
   2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) ........................................................ 10

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir. 1996) ........................................................................ 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973) ....................................................................... 14

*Maley v. Del. Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 22

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985) ....................................................................... 11

*Marsh & McLennan*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................... 17, 19, 21

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) .................................................................... 10

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ....................................................................... 10

*Missouri v. Jenkins,*
    491 U.S. 274 (1989)......................................................................................... 14

*Morris v. Affinity Health Plan, Inc.,*
    859 F.Supp.2d 611 (S.D.N.Y.2012)................................................................ 15

*Olsen v. County of Nassau,*
    2010 WL 376642 (E.D.N.Y. Jan. 26, 2010) ................................................... 15

*Savoie v. Merchs. Bank,*
    166 F.3d 456 (2d Cir. 1999) .............................................................................. 9

*Simmons v. NY. City Transit Auth.,*
    575 F.3d 170 (2d Cir. 2009)............................................................................. 15

*Steinberg v. Nationwide Mut. Ins. Co.,*
    612 F. Supp. 2d 219 (E.D.N.Y. 2009) ............................................................. 11

*Velez v. Novartis Pharm. Corp.,*
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................................ 13

*Viafara v. MCIZ Corp.,*
    2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................................................... 23

*Wal-Mart Stores, Inc. v. Visa USA., Inc.,*
    396 F.3d 96 (2d Cir. 2005)............................................................................ 9, 14

*Willix v. Healthfirst, Inc.,*
    2011 WL 754862 (E.D.N.Y Feb. 18, 2011)..................................................... 18

*Zeltser v. Merrill Lynch & Co., Inc.,*
    2014 WL 4816134 (S.D.N.Y. Sept. 23 2014).................................................. 18

Statutes

Section 524 of the Bankruptcy Code .................................................................. 1, 3

Rules

Fed. R. Civ. P. 23 ............................................................................................... 3, 11

Fed. R. Civ. P. 30(b)(6)...................................................................................... 4, 17

Other Authorities

Manual for Complex Litigation, Fourth, § 21.7..................................................... 12

## PRELIMINARY STATEMENT

Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP (collectively, "Class Counsel") seek an award of $3,750,000 in attorneys' fees and expenses reasonably incurred in connection with an agreement reached with Chase Bank USA, N.A. ("CBUSA" or "Defendant") to settle the above-captioned action (the "Settlement"). The Bankruptcy Court preliminarily approved the Settlement by order dated April 4, 2018. Class Counsel's efforts in connection with the Settlement conferred substantial benefits on the Settlement Class[1] warranting an award of the reasonable fees and expenses sought herein. Plaintiff requests an award of fees that represents 24.6% percent of the monetary value of the settlement and 87% of Class Counsel's lodestar.

In this class action, Plaintiff has alleged that CBUSA violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to update the credit furnishing on certain consumer debts to reflect that those debts were discharged in bankruptcy. CBUSA denies the allegations in the Complaint and Amended Complaint and denies that its conduct violated the discharge injunction. Following substantial motion practice and discovery, Class Counsel negotiated the Settlement Agreement with Defendant's counsel.[2] If approved, the Settlement would resolve the claims against Defendant in this action.

Pursuant to the Settlement Agreement, Defendant has agreed to fund an $11.5 million Settlement Fund and pay Class Counsel up to $3.75 million in Fees and Expenses, subject to Court approval. Based on its records, CBUSA estimates that there are over one million Class Members

---

[1] By separate motion filed contemporaneously herewith, Plaintiffs seek final approval of the Settlement preliminarily approved by the Bankruptcy Court on April 4, 2018.

[2] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

(as defined below).  Those Class Members who submitted payments to CBUSA on an Affected Account post-discharge and do not opt out of the Settlement will receive automatic payments from the Settlement Administrator to reimburse them for those payments.  The remaining settlement monies will be distributed to the Class on a claims-made basis.

It is estimated that automatic reimbursement payments will total approximately $386,000. Based on this estimate of automatic reimbursement payments and the distribution claims submitted to date, it is estimated that the distribution claim payments will range from approximately $100-$114 per Class Member, depending on the number of additional reimbursement claims and distribution claims that are verified.  Notably, no settlement monies will revert to CBUSA and costs of Notice are paid by CBUSA, not from the Settlement Fund.

As a part of the Agreement, CBUSA also represents and warrants that it has requested that the Credit Reporting Agencies delete Class Members' CBUSA tradelines and further represents and warrants that it will not ask the Credit Reporting Agencies to reinstate the Class Members' CBUSA tradelines, unless a Class Member requests that they do so.  In addition, CBUSA represents and warrants that if it sells similar debt within the next three (3) years, it will request that the Credit Reporting Agencies delete the CBUSA tradelines for such accounts, as well.

As such, the Settlement is an outstanding result for the Class—it offers substantial relief to the Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

In addition, this Settlement is comparable to the settlement this Court recently approved in *Echevarria v. Bank of America Corporation, et al. (In re Echevarria),* No. 7:17-cv-08026-VB, Dkt. 23.  In *Echevarria*, where there were over 400,000 class members, Bank of America agreed to fund a $5.5 million settlement fund and pay Class Counsel up to $1 million in fees and expenses.

*Echevarria* at Dkt. 12-1.  Class Counsel exercised the right to seek approval for up to an additional $500,000 in fees and expenses, to be paid from the settlement fund.  *Id*. at Dkt. 14-16.  Bank of America also agreed to substantially identical representations and warranties to those CBUSA agrees to here.  *Id*. at Dkt. 12-1.

Class Counsel took this case on a contingency fee basis with no guarantee of success and have received no payments for the considerable time and money they have expended in the over four years of that this litigation has been pending.  This case was the first of the six related actions that Class Counsel filed and, as a result, the motion practice in this case was particularly extensive and time-consuming and the action has been pending for the greatest length of time.  For all of these reasons, Class Counsel respectfully request an award of the fees and expenses detailed in this application.  *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that CBUSA had a policy of refusing to update its credit furnishing on sold credit-card debt subsequently discharged in a Chapter 7 bankruptcy.  Plaintiff alleges that CBUSA's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressured consumers to repay discharged debt in order to have the negative information removed from his or her credit report.  Am. Compl. ¶¶ 81-90.  Plaintiff alleges that CBUSA's systematic refusal to update its credit furnishing violated the discharge injunction set forth in § 524 of the Bankruptcy Code.  CBUSA denies these allegations and denies that its conduct violated the discharge injunction.  The Settlement Agreement that Plaintiff now submits for final approval provides excellent relief to the Settlement Class concerning these claims, following several years of vigorously contested litigation.

On June 20, 2011, Plaintiff Rusty Haynes filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *In re Rusty Haynes and Bernadette Gatling Haynes*, No. 11-23212 (RDD).  The Bankruptcy Court entered a discharge order on September 26, 2011.  On or about September 13, 2013, Mr. Haynes moved to reopen his bankruptcy for the purpose of challenging CBUSA's conduct, and the Bankruptcy Court granted his motion on December 10, 2013.

On December 31, 2013, Plaintiff Rusty Haynes, individually and on behalf of all others similarly situated, filed a complaint against CBUSA in the Bankruptcy Court (the "Complaint").  *Haynes v. Chase Bank USA, N.A.,* Adv. Proc. No. 13-08370 (RDD), Dkt. No. 1.  Plaintiff filed an Amended Complaint on January 27, 2014.  Dkt. No. 6.  The parties subsequently engaged in extensive motion practice.

On February 24, 2014, CBUSA moved to dismiss the Amended Complaint.  Dkt No. 10.  Following full briefing and oral argument, the Bankruptcy Court denied the motion.  *See* Dkt. No. 56.  On February 28, 2014, CBUSA filed a motion to withdraw the reference of the action to the Bankruptcy Court.  Dkt. No. 13.  After full briefing and oral argument, by decision dated March 2, 2015, the District Court denied that motion.  *See* Dkt. No. 81.

In the course of the litigation, the parties served significant written discovery, including requests for production of documents, interrogatories and requests for admission.  *See* Declaration of Adam R. Shaw in Support of Motion for Attorneys' Fees, Expenses, and Incentive Award Payments ("Shaw Decl.")  at ¶ 4.  In response to requests for production served by Class Counsel, CBUSA made twenty-eight document productions, totaling just under 300,000 pages of documents, which Class Counsel analyzed and utilized in the course of the litigation.  *Id*.  Class Counsel also deposed a corporate representative of CBUSA pursuant to Fed. R. Civ. P. 30(b)(6)

and deposed additional Chase witnesses.  *Id*.  In addition, Class Counsel have issued third party

subpoenas in the course of the litigation.  *Id*.

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an

equitable resolution of the litigation.  The parties had numerous settlement discussions and

mediated the dispute with an experienced and well-respected mediator from JAMS, Michael

Young.  *Id*. at ¶ 6.

Based upon their discovery, investigation, and evaluation of the facts and law relating to

the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the

parties reached agreement on the Settlement.  The Settlement Agreement both provides significant

benefits to Class Members and takes into account the substantial risks inherent in proceeding with

litigation of this nature.  Plaintiff had two objectives in filing this action – to remedy the alleged

violation of the discharge injunction by having CBUSA either remove its furnishing of charge off

on Affected Accounts or update its credit furnishing for those Accounts and to compensate putative

Class Members who Plaintiffs alleges were harmed by CBUSA's actions.  As described further

below, the Settlement Agreement achieves both objectives and further safeguards the credit reports

of future consumers.  CBUSA has addressed the credit furnishing with respect to Class Members'

Affected Accounts and, under the terms of the Settlement, if CBUSA resumes selling debt, it has

represented and warranted that it will address Tradelines related to those sales as set forth in the

Settlement Agreement.  Moreover, the Settlement provides reimbursement to Class Members who

made post-discharge payments on their sold CBUSA debts, and further allows Settlement Class

Members to make claims from an $11.5 million Settlement Fund.  Notice costs and the majority

of the Fees and Expenses are not paid from the Settlement Fund and there is no reversion to

CBUSA.

On March 1, 2018, Plaintiff moved for preliminary approval of the Settlement in the Bankruptcy Court.  *Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 122.  Following a hearing, on April 4, 2018, the Bankruptcy Court issued an order preliminarily approving the settlement and directing that notice be issued.  *Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 125.  In its preliminary approval order, the Bankruptcy Court also conditionally certified the Class, for settlement purposes only, and appointed Rusty Haynes as Class Representative and the law firms Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *See id.*

On April 11, 2018, the parties jointly moved to withdraw the reference so that this Court could consider final approval of the settlement.  *Id.* at Dkt. No. 126.  On May 1, 2018, this Court granted the motion. Dkt. No. 4.

## I.        The Terms of the Proposed Settlement.

Under the Settlement Agreement, the Class is defined as the collective group of those individuals (i) who maintained a Credit Card Account with CBUSA; (ii) whose account CBUSA charged off and then sold to a Debt Buyer on or after January 1, 2008; and (iii) who post-sale sought and obtained a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, through and including the date of preliminary approval.  Agreement, § 1.14.

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that CBUSA will fund a qualified Settlement Fund of $11.5 million.  From this Settlement Fund, the Settlement Administrator shall automatically reimburse Class Members whom CBUSA has identified as having made a payment or payments to CBUSA on an Affected Account post-discharge (called "CBUSA Post-Discharge Payors").  Agreement, § 5.1.  CBUSA Post-Discharge Payors will not need to submit a Claim

Form in order to receive this payment.  *Id.*  Class members who believe that they made post-discharge payments to CBUSA and that they are entitled to reimbursement, but who do not receive reimbursement, may submit a claim.  The remaining funds in the Settlement Fund shall be disbursed primarily to Participating Claimants who submit a Qualifying Claim Form, as described more fully in the Agreement.  *Id.* at § 5.2.  The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $5,000 from the Settlement Fund.  *Id.* at § 15.6.

In addition, as a direct result of the Action, CBUSA has requested that the Credit Reporting Agencies delete the Tradelines associated with Class Members' Affected Accounts that have been identified.  *Id.* at § 3.2.1.  CBUSA further represents and warrants as a part of the Settlement that absent specified exceptions (e.g., a Class Member's request), CBUSA will not ask the Credit Reporting Agencies to reinstate these Tradelines.  *Id.* at §§ 3.2.2-3.2.3.  CBUSA also represents and warrants as a part of the Settlement that "since the filing of the Action, CBUSA has not sold Defaulted Credit-Card Accounts to Debt Buyers."  *Id.* at § 3.2.5.  It further represents and warrants that if it *does* resume selling such debt on or before September 1, 2021, absent any change in federal or state law or contrary direction or expectation from any government regulator, it will request that the Credit Reporting Agencies delete or suppress the CBUSA Tradelines for such accounts.  *Id.* at § 3.2.6  ("If CBUSA resumes selling Defaulted Credit-Card Accounts to Debt Buyers after the date of the execution of this Agreement and on or before September 1, 2021, then, absent any change in federal or state law or contrary direction or expectation from any government regulator, CBUSA will, after the sale of each such account, either (1) request that the Credit Reporting Agencies delete or suppress the CBUSA Tradeline for that account; or (2) request that the Credit Reporting Agencies delete or suppress the CBUSA Tradeline for any such account as

to which the cardmember post-sale files for and obtains a discharge of the debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code.").[3]  Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides relief to them and to future consumers.

Under the Agreement, CBUSA shall separately pay Attorneys' Fees and Expenses and the settlement administration costs directly to Class Counsel and the Settlement Administrator respectively; these payments shall not be made from the Settlement Fund (except as described in the following).  *See id*. at § 15.  In addition, under the Agreement, Class Counsel may seek preliminary approval from the Bankruptcy Court and final approval from the District Court for an award of Attorneys' Fees and Expenses in the Action in an amount not to exceed $3.75 million. *Id*.  CBUSA shall pay these Fee and Expenses directly to Class Counsel.  *Id*.  Notice costs are not paid from the Settlement Fund and there is no reversion to CBUSA.

Pursuant to the terms of the Agreement, Class Counsel now seeks an award of $3,750,000 in Fees and Expenses ($3,646,604.94 in Fees and $103,395.06 in Expenses), as well as an Incentive Award of $5,000 for the Class Representative.

## ARGUMENT

**I.    The Requested Attorneys' Fees Are Reasonable and Appropriate.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980).  Accordingly, counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.

---

[3] Section 3.2.7 in the Settlement Agreement addresses CBUSA's obligations under the Agreement if federal or state law should change to require it to furnish on such debt.

Courts traditionally have used two methods to evaluate the reasonableness of fee requests in common fund cases: (1) the percentage method, which awards attorneys' fees as a percentage of the benefit created for the class; and (2) the lodestar approach, which involves multiplying the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience and then enhancing the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v. Merchs. Bank,* 166 F.3d 456, 460 (2d Cir. 1999). The Second Circuit has held that district courts may use either the percentage method or the lodestar method, although the trend has been toward the percentage method. *Wal-Mart Stores, Inc. v. Visa USA., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Bisys Sec. Litig.,* No. 04-cv-3840, 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007).[4] Even when not used as the primary means to determine an appropriate fee, "[t]he lodestar method remains highly useful . . . as a 'cross-check' to further ensure reasonableness." *Bisys,* 2007 WL 2049726, at *2; *see also Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000).[5]

Regardless of whether a court applies the percentage method or the lodestar method, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances. *Goldberger,* 209 F.3d at 47. The determination of "reasonableness" is within the Court's

---

[4] Additionally, "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model." *In re Lloyd's Am. Trust Fund Litig.,* No. 96-cv-1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002).

[5] "Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)) (quoting *Goldberger,* 209 F.3d at 50).

discretion. *Goldberger,* 209 F.3d at 47; *WorldCom,* 388 F. Supp. 2d at 355.   The Second

Circuit has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria
> in determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3)
> the risk of the litigation ... ; (4) the quality of representation; (5) the requested
> fee in relation to the settlement; and (6) public policy considerations."

*Goldberger,* 209 F.3d at 50 (citation omitted).

Moreover, the Second Circuit has recognized that "market rates, where available, are

the ideal proxy for [Plaintiffs' Counsel's] compensation." *Id.* at 52.   Thus, the court should

"approximate the reasonable fee that a competitive market would bear." *Johnson v. City of

New York,* No. 08-cv-3673, 2010  WL 5818290, at *4 (E.D.N.Y.  Dec. 13, 2010) (citing

*McDaniel v. County of Schenectady,* 595  F.3d 411,420 (2d Cir. 2010)); *see also McDaniel,*

595 F.3d at 422 (district court's focus should be "on mimicking a market").   For the reasons

set forth below, Class Counsel submit that the requested award of fees and expenses is

reasonable under both the percentage and lodestar methods, and when viewed in light of the

*Goldberger* factors.

### A.    CBUSA Will Pay $3.75 Million in Fees and Expenses Directly to Class Counsel.

Before applying either the percentage or lodestar method, it is important to recognize that

CBUSA has agreed to pay $3.75 million of Class Counsel's fees and expenses from its own

resources.   As a result, the fee award will have no impact whatsoever on the funds available to

Class Members.   When the settling defendant agrees to pay class counsel's fees from its corporate

treasury, independent of the benefit obtained for the class, "the Court's fiduciary role in overseeing

the award is greatly reduced, because there is no conflict of interest between attorneys and class

members." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).

Here, CBUSA has agreed to pay Class Counsel's fees and expenses up to $3.75 million. As a result, the fee award will not diminish the benefits provided to the Class Members. "Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class.  Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (approving fee request and noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant].  In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); *Cavalieri v. General Elec. Co.*, No. 06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

Moreover, a fee negotiated between the parties is preferable, given that Defendant has an interest in minimizing the fee, Class Counsel has an interest in maximizing it, and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated.  Moreover, the Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . ."); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("[W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of

the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.").

As such, Class Counsel respectfully submits that the fact that payment of fees and expenses will in no way reduce the funds available for the Class and, further, was negotiated at arm's length, supports approval of the requested award.

**B.     The Proposed Award to Class Counsel is Reasonable and Appropriate Under Both the Percentage and Lodestar Methods.**

In this action, pursuant to the Settlement Agreement and as described above, Defendant has agreed to pay Class Counsel $3.75 million in Fees and Expenses directly.  Where there is both a common fund for the class's recovery (from which attorneys' fees and expenses may also be compensated) and a separate fund for payment of class counsel, courts treat these two funds collectively as a "constructive fund" for purposes of determining the percentage of the fund the fee request represents.  *See, e.g.*, *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (treating fees paid directly to attorneys as part of total value of settlement) (citing *Johnston*, 83 F.3d at 245-46, and *In re Excess Value Ins. Coverage Litig.*, 598 F.Supp.2d 380, 386–87 (S.D.N.Y. 2005) (holding value of settlement includes the value of any legal fees paid by defendants)); Manual for Complex Litigation, Fourth, § 21.7 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…").

Thus, here, the constructive fund totals $15.25 million.  Class Counsel's request for an award of fees and expenses of $3,646,604.94 and $103,395.06, respectively, represents 24.6% of the value of the Settlement.  This percentage is reasonable and well within the range typically

approved by courts both inside and outside of this district.  It is also similar to the percentage

recently approved by this Court in *Echevarria*, where the percentage was 23%.  *See Echevarria*,

No. 7:17-cv-08026-VB, Dkt. 15; *see also, e.g., Central States S.E. and S.W. Areas Health and

*Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 504 F.3d 229 (2d Cir. 2007) (affirming

30% award of a $42.5 million settlement); *City of Providence v. Aeropostale, Inc.,* No. 11 Civ.

7132(CM), 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million

settlement recovery); *Velez v. Novartis Pharm. Corp.,* No. 04 CIV 09194 CM, 2010 WL 4877852,

at *8 (S.D.N.Y. Nov. 30, 2010) (approving $38 million in fees that were approximately 22 percent

of the total settlement value and 25 percent of monetary award); *Hubbard v. Donahoe*, No. 03-

1062, 2013 WL 3943495, at *4, 8 (D.D.C. July 31, 2013) (awarding $910,000 of the $4,550,000

benefit to the class and holding that "the Court considers the separate funds for class recovery and

attorneys' fees collectively as a 'constructive common fund,' valued at $4,550,000."); *In re*

*Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1072 (S.D.

Tex. 2012) (collecting cases and awarding attorneys' fees equal to 20% of the settlement value

and holding that "[h]aving two funds -- one for the claimants, one for the attorneys -- is a well-

recognized variant of a common-fund arrangement.").

Moreover, in addition to obtaining monetary relief for Class Members, Class Counsel have

also obtained a Settlement in which CBUSA has represented and warranted that it has requested

that the Credit Reporting Agencies delete Class Members' CBUSA tradelines and further

represented and warranted that it will not ask the Credit Reporting Agencies to reinstate the Class

Members' CBUSA tradelines, unless a Class Member requests that they do so.  In addition,

CBUSA represents and warrants that if it sells similar debt within the next three (3) years, it will

request that the Credit Reporting Agencies delete the CBUSA tradelines for such accounts, as well.

13

As such, the Settlement offers substantial non-monetary relief to the class, as well, which increases the total value of the Settlement against which Class Counsel's request for fees should be evaluated. Although a precise dollar value cannot be placed on the non-monetary aspect of the Settlement, it is surely of significant value and thus further reduces the percentage of the Settlement represented by Class Counsel's fees.

Application of the lodestar method confirms the reasonableness of Class Counsel's request. The lodestar, or the presumptively reasonable fee, is comprised of the number of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 985 F. Supp. 410, 414 (S.D.N.Y. 1997). Courts then adjust that lodestar figure (typically by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the attorneys' work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-69 (3d Cir. 1973).

Class Counsel collectively expended more than 7,000 hours of professional time in connection with this class action on a fully contingent fee basis. *See* Shaw Decl. at ¶ 14. Class Counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates for its attorney's amounts to $4,174,655.[6] *See id.* at ¶ 15. Thus, Class Counsel's request of a fee award of $3,646,604.94 is equal to 87% of its lodestar. Given that courts frequently award fees equal to a *multiple* of Plaintiffs' Counsel's lodestar in complex class actions, the fee Class Counsel requests here is clearly reasonable. *See, e.g., Wal-Mart Stores,* 396 F.3d at 123

---

[6] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

(multiplier of 3.5 times lodestar of $62,940,045.84 held reasonable); *Bisys,* 2007 WL 2049726, at *3 ("The reasonableness of the 30% [fee] is also confirmed by the resultant lodestar multiplier of 2.99 . . . . Such a multiplier falls well within the parameters set in this district and elsewhere.") (citations omitted); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit") (citing *Morris v. Affinity Health Plan, Inc.,* 859 F.Supp.2d 611, 623–24 (S.D.N.Y.2012)); *In re Comverse Tech., Inc. Sec. Litig.,* 2010 WL 2653354, at *5 (E.D.N.Y. 2010) (awarding 2.78 times lodestar, noting that "[w]here … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,* No. 03-md-1529, 2006 WL 3378705, at *2-3 (S.D.N.Y. Nov. 16, 2009), *aff'd,* 272 Fed. Appx. 9 (2d Cir. 2008) (multiplier of 2.89 times lodestar of $33,686,468); *WorldCom,* 88 F. Supp. 2d at 354 (awarding multiplier of 4 times lodestar of $83,183,238.70); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar of $36,191,751, noting that multipliers between 3 and 4.5 are common).

Additionally the hourly rates used in calculating Class Counsel's lodestar are reasonable. Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits. *Simmons v. NY. City Transit Auth.,* 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill,* 522 F.3d at 190-91; *Olsen v. County of Nassau,* No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010). Class Counsel's hourly rates range from $350 to $1050 for attorneys. *See* Shaw Decl. at ¶ 16. These rates are in line with those charged by firms practicing in New York City on both sides of the caption in complex class actions, and within the hourly rates that have been applied under the lodestar method in other recent cases. Indeed, in the *Echevarria* action, this

Court recently approved Class Counsel's fees using these same hourly rates.   *See also, e.g.,*
*National Law Journal* samplings of law firm billing rates in 2014 (listing a number of law firms
in New York City and other major metropolitan areas with billing rates comparable to or higher
than Class Counsel's)[7]; *Fleisher*, WL 10847814 at *18 & n.15 (approving of Class Counsel's
rates and citing the NLJ 2012 rate survey, stating "The National Law Journal survey for 2012
shows that partners at New York firms charge between $330 to $1200 and associates range
between $215 to $760."); *In re Hi–Crush Partners L.P. Sec. Litig.,* No. 12 Civ. 8557(CM), 2014
WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) ("The rates billed by Lead Counsel (ranging from
$425 to $825 per hour) for attorneys, are comparable to peer plaintiffs and defense-side law firms
litigating matters of similar magnitude."); *Comverse Tech.,* 2010 WL 2653354, at *4 (hourly
rates from $125 to $880 were "not extraordinary for top New York law firms"); *In re Merrill
Lynch & Co., Inc. Res. Reports Sec. Litig.,* No. 02-md-1484, 2007 WL 313474, at *22
(S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associate
were "not inordinate for top-caliber New York law firms").

    **C.**    **The Proposed Award to Class Counsel is Reasonable Under the *Goldberger*
Criteria.**

As noted above, the Second Circuit has stated that whether the Court uses the
percentage method or the lodestar approach, it should continue to consider the following
traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation;
(3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the
settlement; (5) the quality of representation; and (6) public policy considerations.   *Goldberger,*
209 F.3d at 50.   "In applying these criteria, a Court essentially makes . . . a qualitative

---

[7]   Available at https://www.law.com/nationallawjournal/almID/1202636785489/Billing-Rates-
Across-the-Country/ (last visited on Aug. 6, 2018).

assessment of a fair legal fee under all the circumstances of the case." *Marsh & McLennan,* 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) (citation and internal quotation omitted). An analysis of these factors further demonstrates that Class Counsel's fee request is reasonable.

### 1.    The Time and Labor Expended By Class Counsel.

The many hours expended by Class Counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex litigation. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses. Shaw Decl. at ¶ 4. Moreover, they have briefed a number of contested issues to the Bankruptcy Court, including Defendant's motion to withdraw the reference and motion to dismiss. Because this case was the first of the six related actions that Class Counsel filed, the motion practice was particularly extensive and time-consuming. Class counsel have also conducted significant discovery in the course of the litigation, including serving requests for production and interrogatories on CBUSA. *Id.* In response to Plaintiff's document requests, CBUSA produced almost 300,000 pages of documents, which Class Counsel have analyzed. *Id.* Class Counsel also deposed a corporate representative of CBUSA pursuant to Fed. R. Civ. P. 30(b)(6) and several other CBUSA employees, and sought third party discovery. *Id.*

In addition, the terms of the Settlement Agreement were negotiated through extensive meetings and discussions over the course of months. *See* Shaw Decl. at ¶ 5. These negotiations included face-to-face sessions as well as numerous telephone and email discussions. Moreover, the parties' face-to-face negotiations took place during mediation sessions, and follow up communications, with an experienced and highly regarded JAMS mediator. *Id.* at ¶ 6.

The significant time and effort devoted to this case by Class Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.

### 2.      The Risks of the Litigation.

An evaluation of the risks undertaken by Class Counsel in prosecuting this action also supports the reasonableness of their fee request.  The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed."  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir. 1974).  "Contingency risk is the principal, though not exclusive factor courts should consider in their determination of attorneys fees."  *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* No. 98 CV 4318 HB, 2001 WL 709262, at *6 (S.D.NY. June 22, 2001).  "It is well-established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated. *Goldberger,* 209 F.3d at 55.

With respect to the merits of the action, CBUSA continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's action, as it has done every step of the way to date.  As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides.  *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur,* No. 00 CIV 9806 SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23 2014).

Moreover, CBUSA would no doubt vigorously oppose class certification.  At the motion to dismiss stage of the litigation, CBUSA moved to strike the class allegations in Plaintiff's complaint, arguing, among other things, that the bankruptcy court lacked jurisdiction over a nationwide class action of this type.  *See Haynes v. Chase Bank USA, N.A.,* Adv. Proc. No. 13-08370 (RDD), Dkt. No. 11 at 12-14.  While the Bankruptcy Court denied CBUSA's motion to strike the class allegations, CBUSA would no doubt raise similar challenges at the class certification stage and potentially pursue appeals concerning class certification.  Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g., In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

It is also important that Class Counsel undertook this case on a wholly contingent fee basis, knowing the litigation could last for years and would require the expenditure of thousands of attorney hours, as well as thousands of dollars in expenses, with no guarantee of compensation.  "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever."  *Marsh & McLennan,* 2009 WL 5178546, at *18 (citing examples of cases dismissed).  While Class Counsel committed significant resources to the vigorous prosecution of this litigation, Class Counsel has not yet received any compensation.  " Numerous courts have recognized that the

attorney's contingent fee risk is an important factor in determining the fee award." *Prudential,* 985 F. Supp. at 417.

Despite all of the risks assumed by Class Counsel, no premium is being sought to compensate them for those risks.   Instead, Plaintiff's counsel seek fees that are a fractional multiplier of their total lodestar.  This request is inherently reasonable when considered in light of the risks undertaken.

### 3.    The Magnitude and Complexity of the Litigation.

The requested fee award is also reasonable in light of the magnitude and complexity of the litigation.   The procedural history above demonstrates that this litigation is, by its nature, complex.  Moreover, it has already gone on for more than four years, at significant expense to the parties.  If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex and time-consuming.  This litigation would likely include class certification proceedings, further fact discovery, including depositions, interrogatories and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice and trial.  In addition, post-judgment appeals are also possible.  This litigation has been and would continue to be complex, costly and time-consuming and it would require significant judicial oversight.

### 4.    The Requested Fee in Relation to the Settlement.

In *Costco*, the court held that "the fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness."  705 F. Supp. 231, 244 (E.D.N.Y. 2010).  As discussed above, the proposed award represents approximately 24.6% of the monetary value of the Settlement.  This amount is well within the range of fees awarded by courts in this Circuit in similarly-sized class actions *(see supra* pp. 15-16) and it is

comparable to the fees awarded in *Echevarria* for the time expended, given that Class Counsel's hourly rates in the two actions are identical.

### 5. The Quality of the Representation.

The quality of the representation and the standing of Class Counsel also support the reasonableness of the requested fee. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D.S.C. 1987). The Bankruptcy Court previously appointed Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP Class Counsel based on their qualifications and experience and work on behalf the proposed Settlement Class. *See Haynes v. Chase Bank USA, N.A.*, Adv. Proc. No. 13-08370 (RDD), Dkt. No. 125 at 4. Class Counsel has experience in both complex class action litigation and bankruptcy law and have efficiently prosecuted this action on behalf of the proposed Class. Shaw Decl. at ¶¶ 7-13.

The high quality of the opposition that Class Counsel faced is a further testament to the quality of counsel's representation. CBUSA is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g., Marsh & McLennan,* 2009 WL 5178546, at *19 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *In re Marsh ERISA Litig.*, 265 F.R.D. at 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

### 6.      Public Policy Considerations.

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g., WorldCom,* 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered.").  Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

* * *

Thus, as described above, Class Counsel's requested fees are reasonable under each of the percentage of common fund, lodestar, and *Goldberger* analyses.[8]

## II.      Class Counsel's Expenses Are Reasonable and Appropriate.

Plaintiffs' Counsel also request reimbursement of all litigation costs and expenses incurred during this litigation, which currently total $101,965.48 (BSF) plus $1,429.58 (Juntikka).  These relatively modest expenses were reasonable and necessary in this litigation,

---

[8] Although Class Counsel believes this Court may resolve this Motion on its own, if the Court desires, it may also refer the Motion to the Bankruptcy Court for a report and recommendation on the Motion prior to resolving it.  The Bankruptcy Court presided over this litigation for more than four years and thus is familiar with the full procedural history of the litigation and the parties' settlement efforts, as well as Class Counsel's diligence in representing the Class.

and have been expended for the direct benefit of the Class.  *See* Shaw Decl. at ¶ 17.  "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Arakis Energy Corp. Sec. Litig.,* 3431C, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31,2001);  *see, e.g., In re Visa Check,* 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (noting that it is common practice to grant expense request and awarding millions in expenses  where  the  "lion's share of these expenses  reflects  the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, on-line legal research, and travel expenses.");  *In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *69 (D.D.C. July 16, 2001) ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

## III.  The Proposed Incentive Award to the Class Representative is Reasonable and Appropriate.

Providing incentive awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement.  *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is important to compensate plaintiffs for the time they spend and the risks they take.  The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012)

("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel requests that the Court approve the payment of an incentive award to Plaintiff in the amount of $5,000 recognition of his efforts on behalf of the Class. The requested payment is well deserved and falls well within the range of incentive awards approved in prior cases. *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions). Moreover, as with Class Counsel's fee request, the incentive award request was subject to arm's length negotiations between parties and was adequately disclosed in advance to the Class and has not been objected to. Plaintiff reviewed, and discussed with Class Counsel, various pleadings, discovery responses and memoranda of law, and was deposed by CBUSA's counsel. Plaintiff also conferred with Class Counsel regarding the status of the case and the settlement negotiations, and represented well the interests of the absent class members. Shaw Decl. at ¶ 18. Plaintiff's participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the request for attorney's fees and costs and incentive award in the amounts indicated.

Respectfully submitted,

Dated:  Albany, New York
        August 6, 2018

**BOIES SCHILLER FLEXNER LLP**

By:      /s/Adam R. Shaw
        George F. Carpinello
        Adam R. Shaw
        Anne M. Nardacci
        30 South Pearl Street
        Albany, NY  12207
        (518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2018, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/Adam R. Shaw_____
Adam R. Shaw
